■ David Best et al., Appellants, v Nemoto Yutaka et al., Respondents. [646 NYS2d 995] —In an action to recover damages for personal injuries, etc., the plaintiffs appeal from so much of an order of the Supreme Court, Kings County (Dowd, J.), dated January 3, 1995, as, upon reargument, adhered to a prior de-

termination granting the motion of the defendants for leave to amend their answer to assert the affirmative defense of release and for summary judgment dismissing the complaint on that basis.

Ordered that the order is affirmed insofar as appealed from, with costs.

On October 3, 1990, the plaintiff David Best voluntarily executed a document captioned "RELEASE OF ALL CLAIMS" wherein he agreed, *inter alia,* to discharge the defendants "from any and all claims * * * which the undersigned now has * * * or which may hereafter accrue on account of or in any way growing out of any and all known and unknown * * * bodily and personal injuries and property damage and the consequences thereof" arising from an accident which occurred on September 5, 1990. The text of the release was followed by the statement "THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT" in large capital letters, and immediately above Mr. Best's signature appeared the words "CAUTION: READ BEFORE SIGNING BELOW" in bold-faced type. The plaintiffs presently maintain that the Supreme Court erred in granting the defendants' application for leave to amend the answer to assert the release as a defense to the plaintiffs' personal injury action. Moreover, notwithstanding the clear terms of the release, the plaintiffs contend that a question exists regarding whether the parties intended it to apply to Mr. Best's alleged physical injuries. We disagree.

The Supreme Court did not improvidently exercise its discretion by permitting the challenged amendment. Pursuant to CPLR 3025 (b), leave to amend pleadings may be granted "at any time" and "shall be freely given upon such terms as may be just". Inasmuch as the plaintiffs did not demonstrate significant prejudice warranting the denial of the amendment *(see, Edenwald Contr. Co. v City of New York,* 60 NY2d 957; *Crawford v Koloniaris,* 199 AD2d 235; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3025:6, at 356), the application for leave to amend was properly granted.

Similarly, we conclude that summary judgment was properly awarded in favor of the defendants on the basis of the release. It is firmly established that "a general release is governed by principles of contract law" and "the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake, must be established or else the release stands" *(Mangini v McClurg,* 24 NY2d 556, 562, 563). The plaintiffs have come forward with no evidence demonstrating any of the foregoing grounds for invalidating the release *(see,*

*e.g., Martino v Kaschak,* 208 AD2d 698). Rather, they argue that Mr. Best believed and intended that the release would pertain only to his property damage claim and would not bar a claim for personal injuries. However, the plain and unmistakable terms of the release refute this contention by expressly releasing the defendants from claims for bodily and personal injuries *(see, Romero v Khanijou,* 212 AD2d 769; *DeQuatro v Zhen Yu Li,* 211 AD2d 609). The law is clear that "one who executes a plain and unambiguous release cannot avoid its effect by merely stating that [he] misinterpreted its terms" *(Koster v Ketchum Communications,* 204 AD2d 280; *see, Cortino v London Terrace Gardens,* 170 AD2d 305; *Touloumis v Chalem,* 156 AD2d 230). Likewise, "[w]here, as here, the language with respect to the parties' intent is clear and unambiguous, it will be given effect, regardless of one party's claim that he intended something else" *(Thailer v LaRocca,* 174 AD2d 731, 733).

The plaintiffs further attempt to avoid the effect of the release by claiming that Mr. Best did not read the document prior to signing it. However, the failure to read an instrument prior to execution has long been held a legally unacceptable basis for refusing to abide by its terms *(see, Gillman v Chase Manhattan Bank,* 73 NY2d 1; *Florence v Merchants Cent. Alarm Co.,* 51 NY2d 793; *Pimpinello v Swift & Co.,* 253 NY 159), a principle which has been applied with equal vigor in cases involving releases *(see, e.g., Romero v Khanijou,* 212 AD2d 769, *supra; Martino v Kaschak,* 208 AD2d 698, *supra; Sofio v Hughes,* 162 AD2d 518; *Touloumis v Chalem,* 156 AD2d 230, *supra).*

Notwithstanding the established law in this area, the dissent agrees with the plaintiffs' argument that the parties may have intended the release to apply only to claims for property damage. The dissent finds purported "evidence" of such a mutual mistake in the following circumstances: the release was executed some 28 days after the accident, Mr. Best was not represented by counsel at the time of execution, the instrument appears to have been hastily prepared, the settlement amount seems more consistent with a compromise of a property damage claim than a personal injury claim, Mr. Best may have suffered some type of physical injury, and the defendants requested certain information regarding the alleged injury as late as 1991. We find that these factors, whether considered individually or collectively, fall woefully short of raising a question of fact regarding mutual mistake. The fact that Mr. Best was not represented by counsel at the time he signed the release is of no moment, since the defendants did nothing to

discourage such legal representation and "there is no evidence in the record that [he] could not have consulted with [his] attorney before executing the release, had [he] chosen to do so" *(Romero v Khanijou, supra* at 770). Similarly, the facts that the release was executed approximately one month after the accident and was for a relatively small amount of money hardly suggest a mutual mistake. Rather, as the Court of Appeals has observed: "It requires particular emphasis that, more often than not, the releasors in personal injury cases are willing to settle for relatively small sums, or sums that do not discount injuries unknown at the time because of the doubtful liability of the releasee, even when ordinary caution would suggest awaiting the development of unknown injuries or consequences. When that is the inducement *it would be false reasoning to assume that the amount of the settlement or the precipitousness of effecting the settlement is corroborative of a mutual mistake" (Mangini v McClurg, supra,* 24 NY2d, at 564; emphasis supplied).

Furthermore, while the record contains no evidence indicating that Mr. Best suffered any accident-related injury, this issue is in any event irrelevant since he has never premised his "mutual mistake" contention upon the existence of any injury which was unknown at the time he executed the release. Of course, "[i]f the injury [was] known, and the mistake * * * [was] merely as to the consequence, future course, or sequelae of a known injury, then the release will stand" *(Mangini v Mc-Clurg, supra,* at 564; *see, Romero v Khanijou, supra; DeQuatro v Zhen Yu Li, supra; cf., Carola v NKO Contr. Corp.,* 205 AD2d 931; *Horn v Timmons,* 180 AD2d 717). Likewise, the mere circumstance that the defendants' carrier continued to correspond with Mr. Best's former attorney regarding Mr. Best's claimed injury subsequent to the execution of the release fails to demonstrate that the defendants believed the release covered only property damage. Indeed, this correspondence is indicative of nothing more than the carrier's performance of a fair and cautious investigation of all claims made by Mr. Best.

The plaintiffs' claims of misrepresentation and fraud, belatedly raised on appeal, are similarly unsubstantiated. Significantly, they have never identified the alleged misrepresentation or the person by whom it was made. Additionally, in their papers in the Supreme Court, the plaintiffs expressly eschewed any belief that a fraud occurred, and their impermissibly vague claim of fraud on this appeal is patently disingenuous. At best, the plaintiffs have established a mere unilateral mistake on the part of Mr. Best as to the meaning and effect of the release.

Such a mistake does not constitute an adequate basis for invalidating a clear, unambiguous and validly executed release.

The facts of this case are markedly similar to those in two very recent decisions of this Court. In *Romero v Khanijou* (212 AD2d 769, *supra*), the plaintiff accepted payment of $4,500 in settlement of a work-related accident and executed a clear and unambiguous general release in favor of the defendant approximately one month after the accident and without the advice of counsel. The plaintiff subsequently commenced a personal injury action, contending that she had not read the release and that the parties had been mutually mistaken as to the nature of her injuries. This Court dismissed the claim as against the defendant, upholding the validity of the release. In *DeQuatro v Zhen Yu Li* (211 AD2d 609, *supra*), the plaintiff accepted payment of $5,500 in settlement of a vehicular collision in which his automobile was a total loss, and executed a general release in connection therewith. He thereafter commenced a personal injury action, contending that the release covered only property damage, that he misunderstood its terms, and that the parties were mutually mistaken as to the nature and extent of his injuries. This Court granted summary judgment dismissing the complaint against the moving defendant. In doing so, we found that the plaintiff could not avoid the clear and unambiguous terms of the release which he willingly signed, and that his claim of mutual mistake was unsubstantiated and insufficient to defeat the release. We find no relevant distinction between the instant case and the decisions in *Romero* and *DeQuatro*. To reach a contrary result on these facts would create a situation in which a plaintiff may avoid the effect of a release which he voluntarily executed by the mere expedient of claiming that he did not read it or was mistaken in his understanding of its clear terms. Accordingly, the position advocated by the plaintiffs would constitute an unwarranted departure from the established law of this State and from our own recent precedent, and would undermine the finality and enforceability of releases. Ritter, Sullivan, and Copertino, JJ., concur.

Miller, J., concurs in part and dissents in part and votes to modify the order appealed from by deleting the provision thereof adhering to the prior determination granting that branch of the defendants' motion which was for summary judgment dismissing the complaint and substituting therefor a provision vacating so much of the prior determination and denying that branch of the defendants' motion, with the following memorandum in which Rosenblatt, J. P., concurs: I do not dis-

agree with the majority's conclusion that the court providently exercised its discretion in granting the defendants' motion for permission to serve an amended answer interposing the affirmative defense of release. However, I do not concur insofar as the majority concludes that court was correct to award summary judgment to the defendants on the basis of the release.

"The general rule is that 'a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between the parties' " *(Thailer v LaRocca,* 174 AD2d 731, 733, quoting *Appel v Ford Motor Co.,* 111 AD2d 731, 732). Moreover, it is equally well established that a party who signs a release may not avoid it by claiming that he misunderstood its terms *(Cortino v London Terrace Gardens,* 170 AD2d 305). However, this rule does not apply in those rare circumstances—as here— when there is compelling evidence that the release does not represent the true intent of the parties *(see, Mangini v McClurg,* 24 NY2d 556; *Cortino v London Terrace Gardens, supra; Starr v Johnsen,* 143 AD2d 130). I believe that the unusual circumstances of this case present such a situation, as the evidence produced strongly casts doubt upon whether the parties in fact intended the release to apply to the plaintiff's physical injuries.

On September 5, 1990, the plaintiff David Best was injured when the car in which he was riding was struck by a car driven by the defendant Nemoto Yutaka. Yutaka was arrested for driving while intoxicated. The injured plaintiff was seen at the hospital on the date of the accident and again two days later. The hospital emergency medical record recited the injured plaintiff's complaints of "bleeding from throat and blood in urine and swollen sore back and (left) foot swollen". As a result of those injuries, the injured plaintiff later allegedly developed a bone infection which necessitated the amputation of some of his toes.

The injured plaintiff executed the release on October 3, 1990, less than one month after the accident. When he executed the release, he was not represented by counsel. The release itself presents a question as to its sufficiency. Although it contained a space for the notarization of the injured plaintiff's signature, there was no notarization. The blank spaces on the pre-printed release form were carelessly filled in. The defendants' names were misspelled and inverted. The release numerically recited the consideration paid as "$6727.00," yet the amount written out in words was "six thousand twenty seven dollars". This $700 discrepancy is unexplained. As the plaintiffs now contend,

either amount, whichever one represents the actual consideration paid, clearly appears to be far more consistent with a book value payment for property damage to an aging BMW automobile, which was totally destroyed in the accident, than with a personal injury claim.

Notably, after the release was executed, the parties proceeded as if the release covered property damage only. This action, commenced in July 1991, seeks only damages for personal injuries. Indeed, the defendants' answer, filed shortly thereafter, did not assert the release as a defense. For over two years, the parties proceeded with discovery on the personal injury claim. The plaintiffs proffered correspondence from the defendants' insurance carrier written in 1991, which referred to the release and yet sought additional information from the plaintiffs. A later letter from the carrier requested the disclosure of medical records and inquired into the injured plaintiff's medical condition. If the carrier believed the release, to which it specifically referred, was intended to cover the injured plaintiff's physical injuries then there would have been no cause for the insurance carrier to seek out the requested medical information. It was not until the eve of trial—over three years after the injured plaintiff executed the release— that the defendants first moved to amend their answer to assert the release as a defense. Under these circumstances, there is a good deal of merit to support the claim that the release was not intended to cover the injured plaintiff's personal injuries, and at the very least the issue presents a factual dispute that may not properly be determined as a matter of law.

It is also significant that the plaintiffs have not yet had an opportunity to depose potential witnesses who might have knowledge of the circumstances surrounding the execution of the release. The plaintiffs' failure to previously seek such discovery is directly attributable to the defendants' failure to more promptly raise their affirmative defense of release; the release was not previously in issue. Therefore, in light of all of the foregoing circumstances, I find that the appropriate course is to deny the defendants' summary judgment motion, as these matters all cast the parties' actual intent into doubt and establish the existence of issues of fact (see, Museums at Stony Brook v Village of Patchogue Fire Dept., 146 AD2d 572).